## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BROOKSTONE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10752 (BLS) |
| Debtors. | (Joint Administration Requested) |
| | **Ref. No. 14** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364 AND 507, (A) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING AND GRANT SENIOR LIENS AND SUPERPRIORITY CLAIMS, (B) AUTHORIZING USE OF CASH COLLATERAL, (C) GRANTING LIENS AND PROVIDING SUPERPRIORITY CLAIMS, (D) GRANTING ADEQUATE PROTECTION, (E) MODIFYING THE AUTOMATIC STAY, (F) SCHEDULING A FINAL HEARING, AND (G) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"), dated April 3, 2014, of Brookstone Holdings Corp. and certain of its direct and indirect subsidiaries, each as a debtor and debtor-in-possession (collectively, the "Debtors") in the above-referenced Chapter 11 Cases (the "Chapter 11 Cases"),[2] pursuant to sections 105, 361, 362, 363, 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Bankruptcy Rules (the "Local Rules") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), seeking, among other things:

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Brookstone Holdings Corp. (4638), Brookstone, Inc. (2895), Brookstone Company, Inc. (3478), Brookstone Retail Puerto Rico, Inc. (5552), Brookstone International Holdings, Inc. (8382), Brookstone Purchasing, Inc. (2514), Brookstone Stores, Inc. (2513), Gardeners Eden, Inc. (7793), Brookstone Military Sales, Inc. (2029), Big Blue Audio LLC (N/A), Brookstone Holdings, Inc. (2515); and, Brookstone Properties, Inc. (2517). The Debtors' corporate headquarters and the mailing address for each Debtor is One Innovation Way, Merrimack, NH 03054.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

(a)    authorization for Brookstone Holdings Corp. (the "Borrower") to obtain senior secured superpriority post-petition financing, and for all of the other Debtors (collectively, the "Guarantors", and collectively with the Borrower, the "Loan Parties") to jointly and severally guarantee the Borrower's obligations in connection with the DIP Facility (defined below), pursuant to that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of April 3, 2014 (together with all schedules and exhibits thereto, as the same may be amended, restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement," and together with all agreements, notes, instruments, certificates or other documents related to, executed or otherwise delivered in connection therewith (including the Post-Petition LC Documents (defined below)), as each may be amended, restated, supplemented or otherwise modified from time to time, the "DIP Documents"), by and among the Borrower, the Guarantors, the lenders party to the DIP Credit Agreement from time to time (the "DIP Lenders") and Wilmington Savings Fund Society, FSB as administrative agent and collateral agent for itself and the DIP Lenders (defined below) (in such capacities, collectively, the "DIP Agent"), providing for, *inter alia*, a first lien, superpriority, multiple draw term loan facility providing for the borrowing of term loans from time to time (in accordance with the DIP Budget (defined below) and subject to the terms and conditions of the DIP Documents) in an aggregate principal amount not to exceed $96.25 million (the "DIP Facility"), consisting of:

(i)    a multiple draw term loan facility (collectively, the "Tranche A New Money Term Loans") in an aggregate maximum principal amount not to exceed $60 million, of which (x) $55 million shall be drawn in a single draw by the Borrower on the Closing Date (defined below), and up to $43,419,755.24 of such draw shall be used to repay the Prepetition Credit Facility Obligations (defined below), up to $4,732,212.45 of which shall be used to cash collateralize letters of credit issued and outstanding under the Prepetition Credit Facility Documents (defined below) (the "Prepetition Letters of Credit") and up to $1,500,000 of which shall be used to cash collateralize the Post-Petition Letters of Credit (defined below)) and (y) $5 million shall be drawn on, or within five (5) business days after, entry of the Final Order; and

(ii)    a term loan facility (the "Tranche B Facility") in an aggregate maximum principal amount of $36.25 million, consisting of: (a) a new money term loan in the aggregate principal amount of $6.25 million (the "Tranche B New Money Loan"), which shall be drawn in a single draw by the Borrower on the Closing Date, and (b) a deemed roll-up, as of the Closing Date, in respect of $30 million in aggregate principal amount (the "Roll-Up Amount") of Prepetition Notes (defined below) held by certain of the DIP Lenders (and/or their affiliates or related parties, an entity or an affiliate of an entity that administers or manages a DIP Lender or the same investment advisor or an advisor under common control with such DIP Lender, affiliate or advisor, as applicable) as of the Record Date (as defined in the DIP Credit Agreement) (the "Roll-Up DIP Loans", and together with the Tranche B New Money Loans, the "Tranche B Term Loans") in accordance with the DIP Documents;

(b)    authorization for the Debtors to execute and deliver the DIP Documents and to perform their respective obligations thereunder and such other and further acts as may be required in connection with the DIP Documents, including, without limitation, the payment of all principal, interest, fees, costs, expenses and other amounts payable under the DIP Documents as

such amounts become due and payable, including, without limitation, administrative agent fees, closing fees and other fees payable thereunder, and the reasonable and documented fees and disbursements of attorneys and advisors engaged by the DIP Agent, the DIP Lenders and the Post-Petition LC Issuer (defined below) (collectively, and including, without limitation, all "Obligations" as defined in the DIP Credit Agreement, the "DIP Obligations") to the extent provided in and in accordance with the terms of the DIP Documents;

      (c)     authorization for the Borrower to establish a non-interest bearing post-petition cash collateral account (the "Post-Petition LC Cash Collateral Account") at Wilmington Savings Fund Society, FSB (in its capacity as the issuer of Post-Petition Letters of Credit (defined below), the "Post-Petition LC Issuer") pursuant to the terms and conditions of the Post-Petition LC Reimbursement Agreement (defined below) in which the Borrower shall maintain cash in an aggregate amount not to exceed the Post-Petition LC Cash Collateral Amount (defined below), to cash collateralize the Borrower's reimbursement obligations pursuant to that certain letter of credit reimbursement agreement, dated as of the Closing Date (as amended, restated, supplemented or otherwise modified from time to time, the "Post-Petition LC Reimbursement Agreement", and together with a cash collateral account pledge and security agreement (the "Post-Petition LC Security Agreement"), and all other pledge, deposit and security agreements related to the Post-Petition LC Reimbursement Agreement, or executed in connection therewith, and any application for irrevocable commercial letters of credit, collectively, the "Post-Petition LC Documents"), between the Post-Petition LC Issuer and certain of the Loan Parties, in each case, with respect to certain post-petition commercial, standby or documentary letters of credit (collectively the "Post-Petition Letters of Credit") to be issued by the Post-Petition LC Issuer, Branch Banking and Trust Company, or such other letter of credit issuer acceptable to the Required Lenders (as defined in the DIP Credit Agreement). The aggregate face amount of all such Post-Petition Letters of Credit shall not exceed $8,075,000 (the "Post-Petition Maximum LC Amount");

      (d)     authorization for the Debtors to grant (i) the DIP Liens (defined below) and the DIP Superpriority Claims (defined below) to the DIP Agent for the benefit of the DIP Lenders; and (ii) the LC Lien (defined below) to the Post-Petition LC Issuer for the benefit of itself and any other issuer of a Post-Petition Letters of Credit issued in accordance with the Post-Petition LC Documents, each as more fully set forth in this Interim Order;

      (e)     authorization for the Debtors to use, subject to the terms and conditions set forth in this Interim Order, Cash Collateral (defined below) and all other Prepetition Collateral (defined below), as more fully set forth in this Interim Order;

      (f)     upon entry of this Interim Order and satisfaction or waiver of the conditions set forth in the DIP Documents, authorization for, *inter alia*, (i) the Debtors to borrow $55 million in Tranche A New Money Term Loans and $6.25 million in the Tranche B New Money Loans, (ii) the Roll-Up DIP Loans, (iii) the Debtors to immediately use the proceeds of the DIP Facility to, simultaneously with the initial draw under the DIP Facility, repay the Prepetition Credit Facility Obligations (defined below) in full (subject to paragraph 36 below) and cash collateralize Prepetition Letters of Credit, whereupon, subject to the occurrence of the Discharge Date (defined below), the existing liens, claims and encumbrances of the Prepetition Credit Facility Parties (defined below) shall automatically and irrevocably terminate, and any UCC

(defined below) filings filed against the Joint Ventures (defined below) with respect to Airport Inventory (defined below) shall continue in effect and shall be deemed to be assigned to the DIP Agent on behalf of and for the benefit of the DIP Lenders (without any representation, warranty or recourse from or to the Prepetition Agent (defined below)), and to provide operating cash for the Debtors (subject to the terms of the DIP Documents and the DIP Budget (defined below)); (iv) fund the Post-Petition LC Cash Collateral Account to the extent necessary to allow for the issuance of Post-Petition Letters of Credit in accordance with the Post-Petition LC Documents in an aggregate amount not to exceed the Post-Petition Maximum LC Amount; (v) use Cash Collateral and other collateral and granting the adequate protection described herein; and (vi) granting related relief described herein;

(g)    the modification of the automatic stay pursuant to section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors, the DIP Agent, the DIP Lenders, the Post-Petition LC Issuer and the Prepetition Secured Parties (defined below) to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order; and

(h)    scheduling a final hearing (the "Final Hearing"), to consider entry of a final order (the "Final Order") granting the relief requested in the Motion and approving the form of notice with respect to the Final Hearing;

and the Bankruptcy Court having considered the Motion and the exhibits attached thereto the evidence proffered at the interim hearing held on April [4], 2014 (the "Interim Hearing") to consider the relief requested in the Motion; and due and appropriate notice of the Motion, the relief requested therein and the Interim Hearing having been provided in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules and having been served by the Debtors on the thirty (30) largest unsecured creditors of the Debtors, the DIP Agent, the DIP Lenders, the Post-Petition LC Issuer, the Prepetition Secured Parties, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), the Internal Revenue Service and the Securities and Exchange Commission and any other party in interest asserting a purported lien against the Debtors' assets in compliance with Bankruptcy Rule 4001(c) and the Local Rules (collectively, the "Notice Parties"); and upon the record made by the Debtors and other parties in interest at the Interim Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

-4-

## THE BANKRUPTCY COURT HEREBY FINDS, ORDERS AND CONCLUDES THAT:[3]

1.    ***Commencement.***  On April 3, 2014 (the "Petition Date"), each of the Debtors

filed a voluntary petition with this Bankruptcy Court commencing the Chapter 11 Cases. The

Debtors are continuing to operate their respective businesses and manage their respective

properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.    ***Jurisdiction.***  This Court has core jurisdiction over the Chapter 11 Cases, the

Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    ***Notice.***  The interim relief granted herein is necessary to avoid immediate and

irreparable harm to the Debtors and their estates pending the Final Hearing.  Under the

circumstances, the notice given by the Debtors of the Motion, the relief requested therein and

herein, and the Interim Hearing constitutes appropriate, due and sufficient notice thereof, and

complies with Bankruptcy Rule 4001 and the Local Rules, and no further notice of the relief

sought at the Interim Hearing is necessary or required.

4.    ***Debtors' Stipulations.***  Subject to paragraph 36 below, after consultation with

their attorneys, financial advisors and other consultants, the Debtors admit, stipulate,

acknowledge and agree, that:

(a)    *Prepetition Credit Facility Obligations*

(i)    as of the Petition Date, the obligations of each of the Loan Parties other
than Brookstone Holdings Corp. (the "Credit Facility Obligors") under the prepetition
credit facility (the "Prepetition Credit Facility") pursuant to that certain Amended and
Restated Credit Agreement, dated as of August 13, 2013 (as amended, restated,
supplemented or otherwise modified prior to the Petition Date, the "Prepetition Credit
Agreement," and together with all the notes, documents, instruments or certificates
related to, executed or delivered in connection therewith, the "Prepetition Credit Facility

---

[3] Where appropriate in this Interim Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052.

Documents"), by and among Brookstone Company, Inc., the other Credit Facility Obligors, the lenders party thereto (collectively, the "Prepetition Credit Facility Lenders") and Wells Fargo Bank, National Association ("Wells Fargo"), as administrative agent and term loan agent (in such capacities, the "Prepetition Agent", and together with the Prepetition Lenders, the "Prepetition Credit Facility Parties"), constitute legal, valid and binding obligations of each of the Credit Facility Obligors;

(ii)     the Credit Facility Obligors granted liens and security interests (the "Prepetition Credit Facility Liens") to the Prepetition Agent, for its benefit and the benefit of the Prepetition Credit Facility Lenders, to secure the Credit Facility Obligors' obligations under the Prepetition Credit Facility Documents (collectively, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Credit Facility Documents, the "Prepetition Credit Facility Obligations") and such liens include a security interest in all of the "Collateral" as defined in and as set forth in the Prepetition Credit Agreement (the "Prepetition Credit Facility Collateral"); and

(iii)     (a) under the terms of the Prepetition Credit Facility, the Loan Parties were obligated under two separate facilities as follows: (i) a revolving credit facility (the "Revolver Loans") and a term loan facility (the "Term Loans"); (b) as of the Petition Date, there was approximately $31,119,755.24 in respect of the Revolver Loans, approximately $12,300,000.00 in respect of the Term Loans, and $4,732,212.45 in respect of the Prepetition Letters of Credit outstanding under the Prepetition Credit Facility Documents and the Prepetition Credit Facility Parties were oversecured on account thereof; (c) the Prepetition Credit Facility Obligations constitute legal, valid and binding obligations of each of the Credit Facility Obligors; (d) no offsets, defenses or counterclaims to the Prepetition Credit Facility Obligations exist; (e) no portion of the Prepetition Credit Facility Obligations is subject to avoidance, disallowance, reduction, subordination or any challenge of any nature, pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) the Prepetition Credit Facility Documents are valid and enforceable by the Prepetition Agent and the Prepetition Credit Facility Lenders against each of the Credit Facility Obligors; (g) the Prepetition Credit Facility Liens constitute valid, binding, enforceable and perfected liens in the Prepetition Credit Facility Collateral, having the priority set forth in the Prepetition Credit Facility Documents, and are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge, subordination or any other challenge, pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (h) no claim of or cause of action held by the Debtors exists against the Prepetition Agent, the Prepetition Credit Facility Lenders or their respective affiliates, subsidiaries, controlling persons, agents, officers, directors, employees, advisors, attorneys, consultants, predecessors in interest, successors and assigns, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition Credit Facility Documents (or the transactions contemplated thereunder), Prepetition Credit Facility Obligations or the Prepetition Credit Facility Liens, including without limitation, any right to assert any disgorgement or recovery, and the Debtors hereby forever waive and release any and all

such claims and causes of action against the Prepetition Agent and the Prepetition Credit Facility Lenders whether at law or in equity, arising under or relating to section 105 and Chapter 5 of the Bankruptcy Code and under any other similar provisions of applicable state or federal law, whether known or unknown.

(b)     *Prepetition Note Obligations*

(i)     as of the Petition Date, the obligations (the "Prepetition Note Obligations") of each of the Debtors other than Brookstone Holdings Corp. (collectively, the "Note Obligors") under that certain Indenture, dated as of October 26, 2010 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Indenture", and together with all the notes, documents, instruments or certificates related to, executed or delivered in connection therewith, note and security documents and the Prepetition Notes (defined below), the "Prepetition Note Documents", and together with the Prepetition Credit Facility Documents, the "Prepetition Debt Documents"), by and among Brookstone Company, Inc., each of the Note Obligors and Wilmington Trust, National Association as successor trustee (the "Prepetition Indenture Trustee"), pursuant to which Brookstone Company, Inc. issued 13.00% Second Lien Senior Secured Notes due 2014 (the "Prepetition Notes," and the holders of such Prepetition Notes, the "Prepetition Noteholders,"; and together with the Prepetition Indenture Trustee, the "Prepetition Note Parties", and together with the Prepetition Credit Facility Parties, the "Prepetition Secured Parties") constitute legal, valid and binding obligations of each of the Note Obligors;

(ii)     the Note Obligors granted the liens and security interests (the "Prepetition Note Liens", and together with the Prepetition Credit Facility Liens, the "Prepetition Liens") to the Prepetition Indenture Trustee, for its benefit and for the benefit of the Prepetition Noteholders, to secure the Note Obligors' obligations under the Prepetition Note Documents (collectively, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Note Documents, the "Prepetition Note Obligations", and together with the Prepetition Credit Facility Obligations, the "Prepetition Debt Obligations"), and such liens include a security interest in all of the "Collateral" as defined in and as set forth in the Prepetition Indenture (the "Prepetition Note Collateral", and together with the Prepetition Credit Facility Collateral, the "Prepetition Collateral"); and

(iii)     (a) as of the Petition Date, there was at least approximately $125,612,000 million in principal amount outstanding under the Prepetition Notes (exclusive of any and all interest, fees, costs, charges, premiums or other amounts that accrued but were unpaid as of the Petition Date or otherwise payable under the Prepetition Indenture); (b) the Prepetition Note Obligations constitute legal, valid and binding obligations of each of the applicable Debtors; (c) no offsets, defenses or counterclaims to the Prepetition Note Obligations exist; (d) no portion of the Prepetition Note Obligations is subject to avoidance, disallowance, reduction, subordination or any challenge of any nature, pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Prepetition Note Documents are valid and enforceable by the Prepetition Indenture Trustee and the Prepetition Noteholders against each of the Note Obligors; (f) the Prepetition Note Liens

constitute valid, binding, enforceable and perfected liens in the Prepetition Note Collateral, having the priority set forth in the Prepetition Note Documents, and are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge, subordination or any other challenge, pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (g) no claim of or cause of action held by the Debtors exists against the Prepetition Indenture Trustee, the Prepetition Noteholders or their respective affiliates, subsidiaries, controlling persons, agents, officers, directors, employees, advisors, attorneys, consultants, predecessors in interest, successors and assigns, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), whether arising under or in connection with any of the Prepetition Notes, the Prepetition Note Documents (or the transactions contemplated thereunder), the Prepetition Note Obligations or the Prepetition Note Liens, including without limitation, any right to assert any disgorgement or recovery, and the Debtors hereby forever waive and release any and all such claims and causes of action against the Prepetition Indenture Trustee and the Prepetition Noteholders whether at law or in equity, arising under or relating to section 105 and Chapter 5 of the Bankruptcy Code and under any other similar provisions of applicable state or federal law, whether known or unknown.

(c)    *Cash Collateral.*  The Debtors represent that substantially all of the Debtors' cash (other than cash advanced by the DIP Lenders under the DIP Facility), including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral of the Prepetition Secured Parties.

5.    ***Findings Regarding Consents and Consigned Inventory.***

(a)    All goods and other inventory (collectively, the "Airport Inventory") consigned or otherwise placed for sale in the stores and kiosks maintained or operated by the limited liability companies governed by certain limited liability company agreements (or similar agreements) with a Debtor or any direct and indirect subsidiary of a Debtor (whether or not wholly-owned) and the counter-party thereto (collectively, the "Joint Ventures") and located at any airport (including any warehouse or other storage facilities related thereto, the "Airports") is owned by, and title remains with, the applicable Debtor. Title to any such Airport Inventory shall be transferred to the applicable Joint Venture only at the time such Airport Inventory is sold to a retail customer of such Joint Venture.

-8-

6.    ***Findings Regarding the DIP Facility.***

(a)    *Good Cause.*  Good cause has been shown for the entry of this Interim Order.

(b)    *Need for Post-Petition Financing, Use of Cash Collateral and Repayment of Prepetition Credit Facility Obligations.*  The Debtors have an immediate and critical need to obtain entry of the Interim Order, use Cash Collateral and to obtain credit pursuant to the DIP Facility in order to permit, among other things, the orderly continuation of the operation of their businesses and the preservation of the going concern value of their estates.  The ability of the Debtors to finance their operations,  maintain business relationships with vendors, suppliers and customers, pay their employees and otherwise sustain their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral. The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral, the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their assets and properties in the ordinary course of business without the DIP Facility.  The immediate repayment of the Prepetition Credit Facility and the establishment of the Prepetition Credit Facility Reimbursement Account (defined below) in accordance with the terms of this Interim Order is necessary, as the Prepetition Credit Facility Parties have not otherwise consented to the use of their Cash Collateral or the subordination of their Prepetition Credit Facility Liens to the DIP Liens.  Such payment will not prejudice the Debtors or their estates because the payment of such amounts is subject to the rights of parties in interest under <u>paragraph 36</u> below.

(c)     *No Credit Available On More Favorable Terms.*  The Debtors have diligently sought and are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under Bankruptcy Code sections 364(c)(1), 364(c)(2) and 364(c)(3) for the purposes set forth in the DIP Documents without the Debtors also granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out as provided for herein, (i) the DIP Liens (defined below), including the priming of the Prepetition Note Liens, and the DIP Superpriority Claims (defined below) under the terms and conditions set forth in this Interim Order and in the DIP Documents, and (ii) the other protections set forth in this Interim Order and without this Court's authorization of the Roll-Up Amount pursuant to the terms hereof and the DIP Documents, such Roll-Up DIP Loans being a necessary inducement to, and a portion of the compensation for, the DIP Lenders providing the DIP Facility.

(d)     *Reduction of Prepetition Notes by Roll-Up Amount.*  On the Closing Date, the Roll-Up DIP Loans shall reduce the principal amount of the Prepetition Notes held by certain of the DIP Lenders (and/or their affiliates or related parties, an entity or an affiliate of an entity that administers or manages a DIP Lender or the same investment advisor or an advisor under common control with such DIP Lender, affiliate or advisor, as applicable) on a dollar-for-dollar basis in an amount equal to the Roll-Up Amount.  In connection with the deemed roll-up of Prepetition Notes into Roll-Up DIP Loans pursuant to this Interim Order and under the DIP Documents, each of the Debtors, the Prepetition Indenture Trustee and the DIP Lenders is hereby authorized and directed to cooperate in good faith to effectuate the reduction of the Prepetition Notes beneficially owned by the applicable DIP Lenders in a principal amount equal to such DIP

Lenders' respective Roll-up Amounts. Without limiting the generality of the foregoing, each of the Debtors, the Prepetition Indenture Trustee and the DIP Lenders shall take such action as may be reasonably necessary or appropriate (including, without limitation, delivering appropriate directions to any custodian or nominee holding the Prepetition Notes on its behalf) to carry out the purposes and intent of the immediately preceding sentence.

(e)  *Adequate Protection.* The Prepetition Secured Parties are entitled to receive adequate protection of their interests in the Prepetition Collateral (including Cash Collateral) as more fully set forth in paragraph 20 herein.

(f)  *Sections 506(c) and 552(b).* Upon entry of the Final Order, and in exchange for (i) the Prepetition Note Parties', the DIP Agent's and the DIP Lenders' respective agreement to subordinate their liens and superpriority claims to the Carve-Out, and (ii) the Prepetition Note Parties' agreement to subordinate their Prepetition Note Liens to both the DIP Liens and the Carve-Out, the Prepetition Secured Parties, the DIP Agent and the DIP Lenders shall receive (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

(g)  *Business Judgment and Good Faith.* Based upon the pleadings and proceedings of record in the Chapter 11 Cases, (i) the terms and conditions of the DIP Facility as set forth in the DIP Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duty and are supported by reasonably equivalent value and fair consideration, (ii) the DIP Facility and the DIP Documents have been negotiated in good faith and at arm's length among the Debtors, the DIP Agent and the DIP Lenders, and (iii) any and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Facility and the DIP Documents, including, without limitation, all DIP Obligations

or any other credit extended, loans made and other financial accommodations extended or made to the Debtors by the DIP Agent, the DIP Lenders, or the Post-Petition LC Issuer shall be deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered therein, and the DIP Documents (and all extensions of credit thereunder), the DIP Liens, the LC Lien and the Superpriority Claims, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order

(h)    *Immediate Entry.* The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules. Based on the record presented at the Interim Hearing, (i) the Debtors' need for the emergency financing requested in the Motion is critical and immediate, and will allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for successful reorganization; and (ii) absent the relief sought by this Interim Order, the Debtors and the Debtors' estates will be immediately and irreparably harmed. Accordingly, this Court concludes that entry of this Interim Order is in the best interests of the Debtors and their respective estates and all of the creditors of the Debtors' estates.

Based on the foregoing, and upon the record made before this Court in these Chapter 11 Cases and at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

7.    *Interim Financing Approved.* The Motion is approved, subject to the terms of this Interim Order. Any objections to the Motion that have not been withdrawn, waived or

settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

8.    ***Authorization for the DIP Facility and Approval of the DIP Documents.***

(a)    The DIP Facility is hereby approved by this Interim Order. The Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the DIP Documents, and to incur and perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to execute and deliver any other or additional documents, instruments and documents which may be necessary, customary or required for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (including the priority thereof) or that may be reasonably requested or required by either the DIP Agent or the DIP Lenders, and to perform all acts reasonably necessary or desirable to implement the terms of effectuate the purposes of this Interim Order.

(b)    Without in any way limiting the foregoing, the Debtors are hereby authorized, empowered and directed to perform all DIP Obligations, including, but not limited to, the Debtors' indemnification obligations set forth in the DIP Credit Agreement and the Post-Petition LC Reimbursement Agreement and the obligation to pay, in accordance with this Interim Order, the principal, interest, fees, expenses, legal fees and other amounts described in the DIP Documents, as such become due and without the need to obtain further approval of the Court, including, without limitation, administrative agent fees, closing fees and other fees payable thereunder, and the reasonable fees and disbursements of the respective attorneys, advisors, accountants and other consultants engaged by the DIP Agent, the DIP Lenders, or the Post-Petition LC Issuer. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be

deposited and applied as required by, and will be subject to, this Interim Order and the DIP Documents.

(c)    The Debtors are hereby authorized and directed, and Wells Fargo and the DIP Agent are hereby authorized, to enter into, on the Closing Date, one or more deposit account control agreements (the "DIP DACAs") with respect to the Current Master Accounts (as defined in the DIP Credit Agreement) establishing "control" (as defined in the Uniform Commercial Code as in effect from time to time in the State of New York (the "UCC")) of such accounts by the DIP Agent (such DIP DACAs to be in form and substance satisfactory to the DIP Agent at the direction of the Required Lenders, and the Prepetition Agent), provided, however, that the termination or modification of any Existing DACAs (defined below) in connection with the execution and delivery of the DIP DACAs shall not in any way impair, invalidate or otherwise effect the prior perfection or priority of any Prepetition Liens perfected by such Existing DACAs (defined below).  To the extent such DIP DACAs with respect to the Current Master Accounts are not entered into on the Closing Date, (i) the existing deposit account control agreements (the "Existing DACAs") with respect to the Current Master Accounts among the Debtors, Wells Fargo and the Prepetition Agent shall remain in effect and (ii) the Prepetition Agent agrees, and is hereby directed, that it will (x) direct Well Fargo to return access to such Current Master Accounts to the Debtors and terminate any current instructions to sweep amounts therein to the Prepetition Agent and (y) not deliver any further notice or instruction under such Existing DACAs directing Wells Fargo as to the disposition of funds contained in or credited to such Current Master Accounts except as directed by the DIP Agent; provided that if, in any event, such DIP DACAs are not entered into within 10 business days (or such later date as permitted by DIP Agent at the direction of the Required Lenders) after the Closing Date, then within 30 days

after the Closing Date, the Debtors shall (i) establish an account (or accounts) at a Blocked Account Bank (as defined in the DIP Credit Agreement) reasonably satisfactory to the DIP Agent (at the direction of the Required Lenders) (the "New Master Operating Account") that will serve the same functions currently served by (x) the Debtors' "Primary Depositary Account" ending in #1690 currently established at Wells Fargo and (y) the Debtors' "Master Operating Account" ending in #1708 currently established at Wells Fargo, (ii) after the establishment of the New Master Operating Account, cause the Current Master Accounts to be closed, (iii) cause the ACH or wire transfer of all receipts and collections no less frequently than daily to the New Master Operating Account at all times after the establishment thereof and (iv) enter into a Blocked Account Agreement for the benefit of the DIP Agent with respect to the New Master Operating Account.

(d)     The Debtors are expressly and immediately authorized, empowered and directed to execute the Pay Off Letter (defined below) and to incur and perform the obligations set forth therein, including the Prepetition Loan Repayment (defined below)

9.     ***Authorization to Borrow; Enter into Post-Petition LC Documents***

(a)     In order to prevent immediate and irreparable harm to the Debtors and the Debtors' estates, the Debtors are hereby authorized, upon the date that all of the conditions precedent contained in the DIP Documents to the initial availability of the DIP Facility are satisfied or waived in accordance with the terms thereof (the "Closing Date"), to borrow, guarantee and incur liabilities related thereto in an aggregate principal amount of $91.25 million, consisting of (a) $55 million in respect of Tranche A New Money Term Loans to be drawn on the Closing Date (from which the Prepetition Loan Repayment and the deposit of the Post-Petition LC Cash Collateral Amount (defined below) into the Post-Petition LC Cash Collateral

Account shall be made), (b) $6.25 million in Tranche B New Money Term Loans to be drawn on the Closing Date, and (c) the Roll-Up DIP Loans as of the Closing Date, in each case, in accordance with and subject to the terms and conditions contained in the DIP Documents.

(b)    The Borrower is hereby authorized to establish and maintain the Post-Petition LC Cash Collateral Account at the Post-Petition LC Issuer pursuant to the terms and conditions of the DIP Documents. The Borrower is hereby authorized to enter into, and perform all of its obligations under, the Post-Petition LC Documents from time to time. The Borrower shall maintain cash in the Post-Petition LC Cash Collateral Account in an aggregate amount sufficient to cash collateralize the Borrower's reimbursement obligations and fees pursuant to the Post-Petition LC Reimbursement Agreement and the other Post-Petition LC Documents, in each case, with respect to Post-Petition Letters of Credit to be issued by the Post-Petition LC Issuer, Branch Banking and Trust Company or such other letter of credit issuer as determined by the Required Lenders, which amount shall not exceed 103% of the Post-Petition LC Maximum Amount (the "Post-Petition LC Cash Collateral Amount").

10.    *DIP Obligations.*  Upon execution and delivery of the DIP Documents, as evidenced by this Interim Order, the DIP Documents shall represent valid, binding and non-avoidable obligations of the Debtors, enforceable against each of the Debtors, their estates and any successors thereto including, without limitation, any trustee appointed in any of the Chapter 11 Cases, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases") and/or upon the dismissal of the Chapter 11 Cases or Successor Cases. Upon entry of this Interim Order, the DIP Obligations will include all post-petition loans and any other post-petition indebtedness or obligations, contingent or absolute,

which may now or from time-to time be owing by any of the Debtors to the DIP Agent or the DIP Lenders under this Interim Order and the DIP Documents, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts due under the DIP Facility as set forth herein.  No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, avoidable, challenged or recoverable under the Bankruptcy Code or under any applicable law, or subject to any defense, reduction, setoff, recoupment or counterclaim; *provided, however,* in the event that there is a timely successful challenge, pursuant and subject to the limitations contained in paragraph 36 hereof, to the validity, enforceability, extent, perfection or priority of the Prepetition Credit Facility Liens or the Prepetition Credit Facility Obligations, that the Court shall have the power to unwind or otherwise modify, after further notice and hearing, the repayment of the Prepetition Credit Facility Obligations or a portion thereof (which might include the disgorgement or re-allocation of interest, fees, principal or other incremental consideration paid in respect of the Prepetition Credit Facility Obligations or the avoidance of liens and/or guarantees with respect to one or more of the Debtors), as the Court may determine.

11.    *DIP Liens and LC Lien.*

(a)    (i) To secure the DIP Obligations (other than the Post-Petition LC Obligations (defined below)), effective and perfected immediately and automatically upon the entry of this Interim Order, and without the necessity of the execution by the Debtors, or the filing or recordation of mortgages or deeds of trust (whether fee or leasehold), security agreements, lockbox or control agreements, pledge agreements, financing statements or other similar instruments or documents, or the possession or control by the DIP Agent or the DIP Lenders of or over any DIP Collateral (defined below), the DIP Agent, for the benefit of itself and the DIP

Lenders, is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected post-petition security interests in and liens on all DIP Collateral (collectively, the "DIP Liens") and (ii) to secure the obligations of certain of the Loan Parties under the Post-Petition LC Documents (the "Post-Petition LC Obligations"), effective and perfected immediately upon the entry of the this Interim Order, and without the necessity of the execution by the Debtors, or the filing or recordation of mortgages or deeds of trust (whether fee or leasehold), security agreements, lockbox or control agreements, pledge agreements, financing statements or other similar instruments or documents, or the possession or control by the Post-Petition LC Issuer of or over the Post-Petition LC Cash Collateral Account, the Post-Petition LC Issuer, for the benefit of itself and for any other issuer of Post-Petition Letters of Credit issued in accordance with the Post-Petition LC Documents, is hereby granted a continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected post-petition security interests in and liens on the Post-Petition LC Cash Collateral Account (the "LC Lien").

(b)     For purposes hereof, the term "DIP Collateral" shall refer to any and all real and personal property of the Debtors (including, upon entry of the Final Order, avoidance actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof), whether tangible or intangible, whether existing on or as of the Petition Date, or thereafter acquired by, or arising in favor of, the Debtors, whether owned or consigned by or to, or leased from or to, the Debtors, and regardless of where located (including, without limitation, any and all Airport Inventory wherever located), including, without limitation, the Prepetition Credit Facility Reimbursement Account (defined below) and any and all "Collateral" (as defined in the DIP Credit Agreement), and, to the extent not covered by the foregoing, all other assets or property of the Debtors, and all

*[Handwritten margin note at top:]* With respect to the Debtors' non-residential real property leases, and notwithstanding anything to the contrary in this Interim Order or any financing agreements or documents no liens or encumbrances shall be granted on or extend to the Debtors' real property leases themselves except as expressly permitted in the applicable lease, but rather, any liens granted shall extend only to or pursuant to applicable the proceeds realized upon the sale, assignment, termination or other disposition of such real property lease(s) unless and solely to the extent otherwise provided for in the Final Order.

proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, or any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtors from time to time with respect to any of the foregoing, as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the DIP Obligations; *provided, however*, that the DIP Collateral shall not include Excluded Property (as defined in the DIP Credit Agreement).

(c) ~~Notwithstanding anything contained herein to the contrary, upon the entry of the Final Order, the DIP Agent and DIP Lenders shall be granted the DIP Liens upon any lease, leasehold interest held by the Debtors or other license, contract or other agreement to which the Debtors are a party, notwithstanding any provision of any such lease, license, contract or agreement that requires the consent or approval of one or more landlords or other parties in order for any Debtor to pledge, grant, sell, assign or otherwise transfer any such leasehold interest, or the proceeds thereof, or other post-petition collateral related thereto; such a provision is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, and any such provision shall have no force and effect with respect to the transactions granting post-petition liens, in such lease, leasehold interest, contract or agreement or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Agent and the DIP Lenders in accordance with the terms of the DIP Documents or this Interim Order; provided, however, the DIP Lenders may subsequently foreclose and/or assign such leasehold interests only in full compliance with the DIP Documents, this Interim Order and the applicable lease or contract and provided, further, that~~ The provisions of this paragraph 11 shall not (a) render any contract or lease unable to be assumed and/or assigned by any Debtor or (b) impair or limit the ability or right of (i) any Debtor

to assume and/or assign any contract or lease or (ii) any lessor to object to such relief on any grounds, including, but not limited to, violations of the applicable lease and sections 365(b) or 1123 of the Bankruptcy Code.  Upon entry of the Final Order, all landlord agreements to which any of the Prepetition Secured Parties are a party shall be deemed amended to include the DIP Agent as a beneficiary thereunder, and such agreements shall thereafter be additionally enforceable by the DIP Agent against, and binding upon, each landlord party thereto in accordance with, and subject to, its respective terms and conditions until the DIP Obligations have been paid in full in cash and the DIP Credit Agreement shall have been terminated.

~~(d)    Upon entry of the Final Order, and subject to applicable state law, notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent (for the benefit of the DIP Lenders) contained in this Interim Order, or otherwise available at law or in equity, and subject to paragraph 30 hereof, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Facility, the DIP Agent may, subject to any separate agreement by and between such landlord and the DIP Agent (a "Separate Agreement"), enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and, subject to any Separate Agreement, shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from such landlord; provided, however, that, subject to any such Separate Agreement, the DIP Agent shall only pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a per diem basis.  Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this paragraph.~~

(d) Upon entry of this Interim Order, without limitation of any of the rights or remedies of the DIP Agent or the DIP Lenders (including, without limitation, all rights afforded under applicable state law) provided in this Interim Order or in any of the DIP Documents, upon or after the acceleration of the DIP Obligations, the DIP Agent shall have the right, in its sole discretion, to demand that any Debtor immediately file and diligently pursue, and prosecute any motion or other appropriate pleading with this Court seeking the assumption and assignment of a lease to the DIP Agent or its designee. If such demand is made by the DIP Agent, the Debtors shall (i) not seek to reject or otherwise terminate such lease, (ii) immediately withdraw any previously filed rejection motion or termination notice with respect to such lease and (iii) file, within one business day (or such longer period as may be agreed to by the DIP Agent in its sole discretion), a motion seeking expedited relief and a court hearing within seven days (or such longer period or with any adjournments as requested by the DIP Agent in its sole discretion) of such demand for the purpose of assuming such lease and assigning it to the DIP Agent and subject to (i) higher and better offers to the extent required under section 363 of the Bankruptcy Code and (ii) the affected lessor's rights under the applicable lease(s) (to the extent such rights are enforceable or effective under section 365 of the Bankruptcy Code) and the Bankruptcy Code. The Debtors (or the DIP Agent as the Debtors' true and lawful agent and attorney-in-fact pursuant to the DIP Documents) are authorized and directed to execute and deliver such agreements, documents and instruments as the DIP Agent may request to effectuate the foregoing. Notwithstanding any provision herein or in the DIP Documents, the DIP Agent and DIP Lenders' right to use or occupy any premises then leased by the Debtors in the event of default shall be limited to (i) the existing rights of the DIP Lenders and landlords under applicable non-bankruptcy law (if any); (ii) written agreement with any applicable landlord; or (iii) as provided for in a further order of the Bankruptcy Court on motion and notice appropriate under the circumstances.

12.    *Priority of DIP Liens.*

(a)    Without limiting the foregoing, to secure the DIP Obligations, the DIP Agent for

its own benefit and the benefit of the DIP Lenders, is hereby granted, subject to the Carve-Out:

> (i)    pursuant to section 364(c)(2) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in all DIP Collateral that is not (or as a result of the refinancing of the Prepetition Credit Facility Obligations) otherwise subject to a valid, perfected and unavoidable security interest or lien as of the Petition Date, including, without limitation, all funds in the Current Master Accounts or any other account of the Debtors, subject only to the Carve-Out;

> (ii)    pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected junior liens on and security interests in all DIP Collateral that is subject only to (w) Permitted Existing Liens (defined in the DIP Credit Agreement), (x) the Prepetition Credit Facility Reimbursement Account Liens (defined below), (y) valid, perfected and unavoidable liens in existence immediately prior to the Petition Date (for the avoidance of doubt, this does not relate to any liens that arise after, or were not perfected prior to, the Petition Date, or to liens that arise after the Petition Date but purport to relate back to periods prior to the Petition Date) or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (in each case, other than the Adequate Protection Liens (defined below) granted hereunder), and (z) the Carve-Out; and

> (iii)    without limiting the scope of clauses (i) and (ii) above, pursuant to section 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected first priority senior priming liens on and security interests in all Prepetition Collateral securing the Prepetition Debt Obligations, wherever located (including Adequate Protection Liens (defined below) related thereto as granted hereunder), subject only to (x) Permitted Existing Liens (as defined in the DIP Credit Agreement), and (y) the Carve-Out.

(b)    Notwithstanding any provisions herein to the contrary, the DIP Liens on the Post-

Petition LC Cash Collateral Account shall be subject and subordinate to the LC Lien.

(c)    Except as expressly set forth herein, the DIP Liens shall not be made subject to or

*pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11

Cases or any Successor Cases. The DIP Liens shall not be subject to sections 506(c) (upon entry

of the Final Order), 510, 549, 550 or 551 of the Bankruptcy Code. No lien or interest avoided

-21-

and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

      13.    ***Protection of DIP Lenders' Rights.***

      (a)    So long as there are any DIP Obligations outstanding under the DIP Documents, or the DIP Lenders have any Commitment (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, the Prepetition Secured Parties shall (i) have no right to and take no action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Prepetition Debt Documents or this Interim Order, or otherwise seek or exercise any enforcement of rights or remedies against any DIP Collateral or in connection with the Adequate Protection Liens (defined below), the Prepetition Collateral or the Prepetition Debt Obligations, including, without limitation, in respect of the occurrence or continuance of any event of default (under and as described further in the Prepetition Debt Documents), (ii) be deemed to have consented to any release of DIP Collateral authorized under the DIP Documents, (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral unless, solely as to this clause (iii), the DIP Agent or the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the date of filing and (iv) deliver or cause to be delivered, at the Debtors' costs and expense (for which the Prepetition Secured Parties shall be reimbursed upon submission to the Debtors of invoices or billing statements), any termination statements, releases and/or assignments (to the extent provided for herein) in favor of the DIP Agent or DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of the

Adequate Protection Liens on any portion of the DIP Collateral subject to any sale or disposition approved or arranged for by the DIP Agent.

14.      ***DIP Superpriority Claims.***  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims against each of the Debtors (the "DIP Superpriority Claims") which shall (a) have priority over any and all other administrative expenses, adequate protection claims or diminution claims (including all Adequate Protection Obligations (defined below)) and all other claims against the Debtors (including any claims allowed pursuant to the obligations under the Prepetition Debt Documents), now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) or 507(b), and over any and all administrative expenses or other claims arising under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of Bankruptcy Code section 1129(a)(9)(A) be considered administrative expenses allowed under Bankruptcy Code section 503(b), and which shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, and shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative, but subject, in each case, only to the Carve-Out.

15.      ***Extension of Credit.***  The DIP Agent and the DIP Lenders shall have no obligation to make any loan or advance under the DIP Documents, and the Post-Petition LC Issuer shall have no obligation to issue any Post-Petition Letters of Credit under the Post-Petition LC

Documents, unless all of the conditions precedent to the making of such extension of credit or issuance under this Interim Order and the applicable DIP Documents have been satisfied in full or waived in accordance with the applicable DIP Documents.

16.    *Use of DIP Facility Proceeds.*

(a)    The proceeds of any borrowing on the Closing Date under the DIP Facility, and any and all further borrowings under the DIP Facility, shall be deposited into the Current Master Operating Account (as defined in the DIP Credit Agreement). All amounts held in or credited to the Current Master Accounts shall be invested at all times in cash and Cash Equivalents (as such term is defined in the DIP Documents). The DIP Agent and the DIP Lenders are hereby authorized, but not required, to take possession of or control over (as defined in the UCC as in effect from time to time in the State of New York), or take any other action in order to validate and perfect the security interests granted to them in the Current Master Accounts hereunder. Whether or not the DIP Agent on behalf of the DIP Lenders shall, in its sole discretion, choose to take possession of or control over, or otherwise confirm perfection of the security interests granted to it hereunder, such security interests in the Current Master Accounts shall be deemed valid, perfected, allowed, enforceable, nonavoidable and not subject to challenge dispute or subordination, at the time and on the date of entry of this Interim Order in favor of the DIP Agent for the benefit of the DIP Lenders. From and after the Closing Date, the Debtors shall be permitted to make withdrawals from the Current Master Accounts only pursuant to the terms hereof and the DIP Documents (including, without limitation, to cash collateralize Prepetition Letters of Credit and Post-Petition Letters of Credit), including for the purposes and in the amounts set forth in the DIP Budget. Under no circumstances may any cash, funds, securities, financial assets or other property held in or credited to the Current Master Accounts, or any other

proceeds of the DIP Facility, be used except as permitted under this Interim Order and the DIP Documents and in accordance with the DIP Budget. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by, and will be subject to, this Interim Order and the DIP Documents.

(b)     Notwithstanding anything contained herein to the contrary, no DIP Collateral, proceeds of the DIP Facility, Cash Collateral, Prepetition Collateral or any portion of the Carve-Out or any other amounts may be used directly or indirectly by any of the Debtors, any statutory committee appointed (if any) in the Chapter 11 Cases (a "Committee"), or any trustee or other estate representative appointed in the Chapter 11 Cases or in the Successor Cases or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith): (i) to seek authorization to obtain liens or security interests that are senior to, or *pari passu* with, the DIP Liens, the LC Lien or the DIP Superpriority Claim (except in connection with any refinancing of the DIP Obligations or to the extent otherwise expressly set forth herein); or (ii) to investigate (including by way of examinations or discovery proceedings), prepare, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, against any of the DIP Agent, the DIP Lenders, the Post-Petition LC Issuer, the Prepetition Secured Parties, and each of their respective officers, directors, controlling persons, employees, agents, attorneys, affiliates, assigns, or successors of each of the foregoing (collectively, the "Released Parties"), with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation thereof),

including, without limitation, (A) any claims or causes of action arising under Chapter 5 of the Bankruptcy Code; (B) any so-called "lender liability" claims and causes of action; (C) any action with respect to the validity, enforceability, priority and extent of, or asserting any challenge, defense, counterclaim, or offset to, the DIP Obligations, the DIP Superpriority Claims, the DIP Liens, the LC Lien, the DIP Documents, the Prepetition Debt Documents or the Prepetition Debt Obligations; (D) any action seeking to invalidate, modify, set aside, avoid or subordinate, in whole or in part, the DIP Obligations or the Prepetition Debt Obligations; (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to either (1) the DIP Agent, the DIP Lenders or the Post-Petition LC Issuer hereunder or under any of the DIP Documents, or (2) the Prepetition Secured Parties under any of the Prepetition Debt Documents (in each case, including, without limitation, claims, proceedings or actions that might impede, prevent, hinder or delay any of the DIP Agent's, the DIP Lenders' or the Post-Petition LC Issuer's assertions, enforcements, realizations or remedies on or against the DIP Collateral in accordance with the applicable DIP Documents and the Interim and/or Final Orders); or (F) objecting to, contesting, impeding, delaying or interfering with, in any way, the DIP Agent's, the DIP Lenders' or the Post-Petition LC Issuer's enforcement or realization upon any of the DIP Collateral, subject to paragraph 30 hereof, once an Event of Default (as defined in the DIP Credit Agreement or, in the case of any Post-Petition Letter of Credit, in the Post-Petition LC Reimbursement Agreement) has occurred; *provided, however,* that no more than $25,000 in the aggregate of the DIP Collateral, proceeds from the DIP Facility, the Carve-Out, Cash Collateral or Prepetition Collateral or any other amounts, may be used by any Committee to investigate (but not seek or conduct formal discovery or prepare and/or commence and/or prosecute any formal motions, pleadings, actions or other proceedings) the claims and/or liens of the Prepetition

Secured Parties under the Prepetition Debt Documents (and the Committee (if any) or any other party with requisite standing shall establish a separate time entry billing matter code with respect to any such investigation, preparation and prosecution).

17. ***Repayment of the Prepetition Credit Facility Obligations.***

(a)    Immediately following the entry of this Interim Order (and as part of the initial borrowing under the DIP Facility), the Debtors shall use a portion of the proceeds from the DIP Facility to repay in full in cash the Prepetition Credit Facility Obligations then outstanding and to cash collateralize Prepetition Letters of Credit (collectively, the "Prepetition Loan Repayment") in accordance with the DIP Documents, this Interim Order and that certain payoff letter, dated as of the Closing Date (the "Pay Off Letter"), between the Prepetition Agent and certain of the Loan Parties.  Following the Prepetition Loan Repayment, the Prepetition Credit Facility Liens on the Prepetition Collateral shall automatically and irrevocably terminate and all Prepetition Credit Facility Obligations shall irrevocably be released and discharged upon the date (the "Discharge Date") that is the earlier of (x) the Challenge Expiration Date with no challenge having been brought in accordance with paragraph 36 hereunder (or if such a challenge is brought, upon entry of a final judgment in favor of the Prepetition Credit Facility Parties) and (y) the date that the Committee determines in writing not to challenge the Prepetition Credit Facility Liens on the Prepetition Collateral.  On the Discharge Date, any UCC filings filed against the Joint Ventures with respect to Airport Inventory shall continue in effect and shall be deemed assigned to the DIP Agent on behalf of and for the benefit of the DIP Lenders.

(b)    Upon entry of this Interim Order, but subject to the occurrence of the Discharge Date, the DIP Agent and each of the DIP Lenders shall succeed to all of the rights and privileges of the Prepetition Agent and Prepetition Credit Facility Lenders under that certain Intercreditor

Agreement, dated as of October 26, 2010, by and among Brookstone Company, Inc., Bank of America, N.A. (as Priority Lien Collateral Agent), the Prepetition Agent and the Prepetition Indenture Trustee. The Prepetition Note Parties each shall continue to be bound by, and be subject to all the terms, provisions and restrictions of, the Intercreditor Agreement with respect to the Prepetition Note Obligations and the lien priorities set forth therein.

(c)     Until the Discharge Date, and as adequate protection against the post-petition diminution in value of any contingent obligations that may be owed to the Prepetition Agent, the Debtors shall establish an account (the "Prepetition Credit Facility Reimbursement Account") into which the sum of $500,000 shall be deposited as collateral security for any documented reimbursement or indemnity obligations that the Debtors may have to the Prepetition Credit Facility Parties under the terms of the Prepetition Credit Facility Documents as to which a claim or demand for payment is made in writing prior to the Discharge Date, in each case, subject to the terms of, and for the purposes set forth in, the Pay Off Letter. The Prepetition Credit Facility Parties shall have a first-priority lien (the "Prepetition Credit Facility Reimbursement Account Liens") on the Prepetition Credit Facility Reimbursement Account and all amounts held therein. Upon the Discharge Date, the Prepetition Credit Facility Reimbursement Account Liens shall automatically terminate and cease to exist, and all remaining amounts held therein or credited thereto, after satisfaction of any reimbursement obligations that are incurred prior to the Discharge Date and are due and payable, shall be released to the Debtors by wire transfer, in immediately available funds, to the Current Master Operating Account as soon as possible, and in any event no later than five (5) business days after the Discharge Date.

(d)     Upon the later of (i) the Discharge Date and (ii) the termination, expiration or cancellation of any Prepetition Letters of Credit that remain outstanding, the Prepetition Credit

Facility Parties shall promptly release to the Debtors, by wire transfer, in immediately available funds, to the Current Master Operating Account, all Cash Collateral received or held by them to cash collateralize any Prepetition Letters of Credit or any other funds held by or on deposit with any Prepetition Credit Facility Lender.  In addition, the Prepetition Credit Facility Parties shall promptly turnover to the DIP Agent (for the benefit of the DIP Lenders) any possessory or control collateral received or held by them (together with any necessary endorsements).

18.     ***Authorization to Use Cash Collateral.***  The Debtors are authorized to use Cash Collateral solely in accordance with the DIP Budget (defined below), subject to the terms and conditions of this Interim Order and the DIP Documents.  Nothing contained in this paragraph or in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any of the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order and the DIP Documents and in accordance with the DIP Budget.

19.     ***Budget and Budget Compliance.***  The Debtors have prepared and delivered to the DIP Agent and the DIP Lenders a budget, a summary of which is attached hereto as Exhibit A (the "DIP Budget"), which (a) DIP Budget shall be updated from time to time in accordance with the DIP Documents, and (b) reflects the Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week from the Petition Date through the 13th week after the Closing Date (to be updated pursuant to the DIP Documents) (as defined in the DIP Credit Agreement) (the "Budget Period").  During the Budget Period, the Debtors are authorized to use the proceeds of the DIP Facility and Cash Collateral in accordance with the DIP Budget, subject to the terms and conditions of the DIP Credit Agreement and the other DIP Documents,

including, without limitation, the budget-related covenants and permitted variances permitted thereunder. Without limiting the foregoing, and except as otherwise expressly provided herein or approved by the DIP Agent (at the direction of the Required Lenders), the Debtors will not, and will not permit any direct or indirect subsidiary directly or indirectly to, use any Cash Collateral or the proceeds of the DIP Facility during the Budget Period in any manner or for any purpose other than as permitted by the DIP Budget and this Interim Order. For the avoidance of doubt, and without limiting the foregoing, the Loan Parties shall comply with the financial covenants set forth in the DIP Credit Agreement.

20.    ***Adequate Protection.***

(a)    *Adequate Protection Liens and Section 507(b) Claims.*

(i)    Pursuant to Sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as additional adequate protection of the interests of the Prepetition Credit Facility Parties in the Prepetition Credit Facility Collateral, to the extent of any post-petition diminution in value from the Petition Date through, but not including, the Discharge Date, of the Prepetition Credit Facility Parties' interests in the Prepetition Credit Facility Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Credit Facility Collateral, the priming of the Prepetition Credit Facility Parties Security interests and liens in the Prepetition Credit Facility Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Interim Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and to secure the Debtors' reimbursement and indemnity obligations to the Prepetition Credit Facility Parties (the "Prepetition Credit Facility Parties' Adequate Protection Obligations"), the Prepetition Credit Facility Parties are hereby granted the following: (x) valid, binding, continuing, enforceable, fully perfected junior security interests and liens upon all pre- and post-petition property of the Debtors that is subject to the DIP Liens (the "Prepetition Credit Facility Parties' Adequate Protection Liens"), which liens shall be junior to the DIP Liens, the Permitted Existing Liens and the Carve-Out; (y) an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code (the "Prepetition Credit Facility Parties' Section 507(b) Claim"), against each of the Debtors with recourse against all pre- and post-petition assets and property of the Debtors, which claims shall be junior to the DIP Superpriority Claims and the Carve-Out; and (z) the Prepetition Credit Facility Reimbursement Account Liens. Notwithstanding anything to the foregoing set forth herein, the adequate protection liens, claims and security interests granted to, or created on behalf of, the Prepetition Credit Facility Parties pursuant to this subclause (i) (including, without limitation, the Prepetition Credit Facility

Parties' Adequate Protection Liens, the Prepetition Credit Facility Parties' Section 507(b) Claim and the Prepetition Credit Facility Reimbursement Account Liens) shall continue in full force and effect from the Petition Date and through, but not including, the Discharge Date; *provided, however*, that the Prepetition Credit Facility Parties shall have five (5) business days after the Discharge Date by which to assert a claim (if any) to the DIP Agent in respect of the Prepetition Credit Facility Parties' Adequate Protection Obligations (such assertion to be made in writing and state, in particularity, the basis and amount of any such claims made for Prepetition Credit Facility Parties' Adequate Protection Obligations); *provided, further, however*, that the Debtors, the DIP Agent and/or the DIP Lenders shall be entitled to object to or contest the basis and/or amount of any claims for Prepetition Credit Facility Parties' Adequate Protection Obligations asserted by the Prepetition Credit Facility Parties.

(ii)    Pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Note Parties in the Prepetition Note Collateral, to the extent of any post-petition diminution in value of the Prepetition Note Parties' interests in the Prepetition Note Collateral, including, without limitation, any such post-petition diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Note Collateral, the priming of the Prepetition Noteholders' security interests and liens in the Prepetition Note Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Interim Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "Prepetition Note Parties' Adequate Protection Obligations", and together with the Prepetition Credit Facility Parties' Adequate Protection Obligations, the "<u>Adequate Protection Obligations</u>"), the Prepetition Note Parties are hereby granted the following: (i) valid, binding, continuing, enforceable, fully perfected junior security interests in and liens upon all pre- and post-petition property of the Debtors that is subject to the DIP Liens (the "<u>Prepetition Note Parties' Adequate Protection Liens</u>," and together with the Prepetition Credit Facility Parties' Adequate Protection Liens, , the "<u>Adequate Protection Liens</u>"), which liens shall be junior to the DIP Liens, the Prepetition Credit Facility Parties' Adequate Protection Liens, the Permitted Existing Liens and the Carve-Out; and (ii) an allowed superpriority administrative expense claim, as provided for in section 507(b) of the Bankruptcy Code (the "<u>Prepetition Notice Parties' Section 507(b) Claim</u>" and together with the Prepetition Credit Facility Parties' Section 507(b) Claim, the "<u>Section 507(b) Claims</u>"), against each of the Debtors, with recourse against all pre-and post-petition assets and property of the Debtors, which claims shall be junior to the DIP Superpriority Claims, Prepetition Credit Facility Parties' Section 507(b) Claim and the Carve-Out.

(b)    *Adequate Protection Payments.*  As further adequate protection for the Prepetition Note Parties, and without further order of or application to the Bankruptcy Court, the Debtors are hereby authorized and directed to pay (1) all unpaid fees, costs and expenses owed prior to and as of the Petition Date, through and including the Closing Date, of the ad hoc committee of

certain of the Prepetition Noteholders (the "Ad Hoc Committee") (including, without limitation, all reasonable fees, expenses and disbursements of (x) Stroock & Stroock & Lavan LLP, (y) Young Conaway Stargatt & Taylor, LLP and (z) Alvarez & Marsal (collectively, the "Noteholder Advisors")), and (2) the current payment of all reasonable and documented (in summary form), out-of-pocket fees, costs and expenses of the Ad Hoc Committee (including all reasonable fees, expenses and disbursements of the Noteholder Advisors), promptly upon receipt of invoices therefor (subject in all respects to applicable privilege, work product, joint defense, and common interest doctrines) and without the necessity of filing motions or fee applications; *provided, however*, that the Noteholder Advisors shall submit copies of their respective invoices for fees and expenses to the Debtors, the U.S. Trustee and Committee (if any), and the U.S. Trustee and Committee (if any) shall have ten (10) calendar days from receipt thereof to object in writing to the reasonableness of such invoices; to the extent that the U.S. Trustee or Committee (if any) so objects to any such invoices, the Debtors shall remit payment on account of the portion of such invoices to which there has been no objection, and the parties shall attempt to resolve any such objection in good faith, absent which the dispute shall be resolved by the Bankruptcy Court; *provided, further*, if applicable, such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product or any other confidential information, including as may be subject to any joint defense or common interest privileges, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product, joint defense, or common interest doctrines. The Noteholder Advisors shall not be required to comply with the U.S. Trustee fee guidelines (if any) for the payment of fees and

expenses. The payments set forth in this paragraph are not and shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

(c)    *Additional Adequate Protection.*  As further adequate protection for the Prepetition Note Parties, and without further order of or application to the Bankruptcy Court: (i)(x) the Debtors shall not sell, dispose, transfer or convey any assets of the Debtors outside of the ordinary course of the Debtors' businesses, and (y) the net proceeds of any sale or other disposition of all, substantially all, or a portion of the Prepetition Collateral shall be applied to reduce permanently the Prepetition Note Obligations in accordance with the Prepetition Note Documents (after application of such net proceeds pursuant to the DIP Documents); (ii) the Debtors shall provide the Prepetition Note Parties with reasonable access to the Debtors' books and records and such financial reports and other information as are provided to the DIP Agent and/or the DIP Lenders pursuant to DIP Documents or otherwise; and (iii) the Prepetition Indenture Trustee (at the direction of the required Prepetition Noteholders) shall have the absolute right to "credit bid" the full amount of all outstanding Prepetition Note Obligations, in full or in part, in connection with any sale of all or any portion of the Prepetition Collateral, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

(d)    *Adequate Protection Reservation.*  The receipt by the Prepetition Note Parties of the adequate protection provided hereunder shall not be deemed an admission that the interests of the Prepetition Note Parties are indeed adequately protected. Further, this Interim Order shall not prejudice or limit the rights of the Prepetition Note Parties to seek additional relief with respect to the use of Cash Collateral or for adequate protection. In addition, nothing herein shall impair

or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate for any postpetition diminution in value during any of the Chapter 11 Cases.

21.    **Reporting.**  The Debtors shall provide the DIP Agent and the DIP Lenders with such financial reports and information required under the DIP Documents.  The Debtors will promptly provide notice to the DIP Agent, for prompt distribution to the DIP Lenders, of any Material Adverse Effect (as defined in the DIP Credit Agreement).  Further, the Debtors shall provide to the DIP Agent and the DIP Lenders such other reports and information as may be reasonably requested by the DIP Agent or the DIP Lenders, and shall grant reasonable access to the Debtors' premises and their books and records in accordance with this Interim Order and/or the DIP Documents.  In addition, the Debtors shall authorize their accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent and each of the DIP Lenders, all such information as may be reasonably requested with respect to the businesses, results of operations, and financial condition of the Debtors.

22.    **Amendment of the DIP Documents.**  No further approval of this Bankruptcy Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith); *provided*, that the Debtors shall provide notice of any material amendments, waivers, consents or modifications to the DIP Documents to counsel to any Committee, counsel to SPB Acquisition LLC (the "Stalking Horse") and the U.S. Trustee, each of whom shall have five (5) calendar days from the date of such notice within which to object in writing to any such material modification or amendment. If the Committee (if any), the Stalking Horse or the U.S. Trustee timely objects to any such

material amendment or modification to the DIP Documents, such material amendment or modification shall only be permitted pursuant to an order of the Bankruptcy Court.

23.    *Modification of Automatic Stay.*  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified as necessary to permit: (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Agent, either in its sole discretion or at the direction of the Required Lenders, or the DIP Lenders may request; (b) the Debtors to take all appropriate action to effectuate the terms hereof, (c) the Debtors to incur all liabilities and obligations to the Prepetition Secured Parties, the DIP Agent, the DIP Lenders and the Post-Petition LC Issuer as contemplated under this Interim Order; (d) the Debtors, the DIP Agent and the Post-Petition LC Issuer to enter into the Post-Petition LC Documents and to perform all obligations thereunder (as applicable); (e) the Debtors to pay all amounts referred to, required under, in accordance with, and subject to the DIP Documents and this Interim Order; (f) the DIP Agent, the DIP Lenders and the Post-Petition LC Issuer to exercise, upon the occurrence and during the continuance of any Event of Default under the DIP Documents and subject to paragraph 30 hereof, all rights and remedies provided for in the DIP Documents and take any or all actions provided therein; (g) the Debtors, the Prepetition Agent and the DIP Agent to enter into one or more deposit account control agreements with respect to the Current Wells Fargo Master Accounts (as defined in the DIP Credit Agreement) and the DIP Agent establishing "control" (as defined in the UCC as in effect from time to time in the State of New York) of such accounts; and (h) the implementation of the terms of this Interim Order.

24.    *Perfection of DIP Liens, LC Lien and Adequate Protection Liens.*

(a)    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of all liens granted herein, including, without limitation, the DIP Liens,

the LC Lien and the Adequate Protection Liens, without the necessity of executing, filing or recording any financing statement, mortgage, notice or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreements) to validate or perfect (in accordance with applicable law) such liens, or to entitle the Prepetition Secured Parties, the DIP Agent, the DIP Lenders or the Post-Petition LC Issuer to the priorities granted herein.

(b)     Notwithstanding the foregoing, the DIP Agent, the DIP Lenders, the Post-Petition LC Issuer, the Prepetition Agent and the Prepetition Credit Facility Lenders, the Prepetition Indenture Trustee and the Prepetition Noteholders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent, on behalf of the DIP Lenders, the Post-Petition LC Issuer, on behalf of itself, the Prepetition Agent, on behalf of the Prepetition Credit Facility Lenders, or the Prepetition Indenture Trustee, on behalf of the Prepetition Noteholders, shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, at the time and on the date of entry of this Interim Order.  Upon the request of the DIP Agent, each of the Prepetition Secured Parties, without any further consent of any party, is authorized to take, execute, deliver and file such

instruments (in each case without representation or warranty of any kind) to enable the DIP

Agent to further validate, perfect, preserve and enforce the DIP Liens.

(c)     A certified copy of this Interim Order may, in the discretion of the DIP Agent, be

filed with or recorded in filing or recording offices in addition to or in lieu of such financing

statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby

authorized to accept such certified copy of this Interim Order for filing and recording.

25.     *Proceeds of Subsequent Financing.* If the Debtors, any trustee, any examiner

with enlarged powers, or any responsible officer subsequently appointed in any of the Chapter 11

Cases, shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy

Code in violation of this Interim Order or the DIP Documents at any time prior to the

indefeasible payment in full in cash of all of the DIP Obligations, the satisfaction of the DIP

Superpriority Claims, and the termination of the DIP Agent's and the DIP Lenders' obligations

to extend credit under the DIP Facility and this Interim Order, including subsequent to the

confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, then

all of the cash proceeds derived from such credit or debt shall immediately be turned over to the

DIP Agent to be applied to the DIP Obligations.

26.     *Maintenance of DIP Collateral.* Until the indefeasible payment in full in cash of

all DIP Obligations and the termination of the DIP Agent's and the DIP Lenders' obligation to

extend credit under the DIP Facility, the Debtors shall (a) insure the DIP Collateral as required

under this Interim Order and the DIP Documents, as applicable, and (b) maintain the cash

management system in effect as of the Petition Date, as modified by the DIP Documents and this

Interim Order and any order that may be entered by the Court in accordance with this Interim

Order.

27. *Insurance Policies.* The Debtors shall continue to maintain all property, operational and other insurance as required and as specified in the DIP Documents. The Debtors shall provide the DIP Agent and its counsel (for distribution to the DIP Lenders) with evidence of such insurance within five (5) calendar days after entry of this Interim Order. Upon entry of this Interim Order and to the fullest extent provided by applicable law, each of the DIP Agent and the DIP Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

28. *Disposition of or New Liens on DIP Collateral.* The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral other than in the ordinary course of business without the prior written consent of the DIP Agent (at the direction of the Required Lenders) (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent, except as otherwise provided for herein).

29. *Termination Date.* On the Termination Date (as defined in the DIP Credit Agreement), (a) all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility will terminate, and (b) all authority to use Cash Collateral shall automatically cease. Subject to paragraph 30 hereof, upon the occurrence of an Event of Default under any of the DIP Documents, the Debtors shall not seek to use Cash Collateral without the prior written consent of the DIP Agent (at the direction of the Required Lenders).

30. *Rights and Remedies Upon Event of Default.* Notwithstanding the provisions of section 362 of the Bankruptcy Code, and without order of or application or motion to the Court, immediately upon the occurrence and during the continuance of an Event of Default under any of the DIP Documents: (a) the Required Lenders may direct the DIP Agent, by written notice to the

Debtors, its counsel, counsel for the Stalking Horse and any counsel for the Committee (if any),

to terminate the DIP Facility, declare the DIP Obligations to be immediately due and payable

and, subject to the immediately following clause (b), exercise all rights and remedies under the

DIP Documents, this Interim Order and provided by applicable law; and (b) the automatic stay

provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent

necessary to permit the DIP Agent and the DIP Lenders to exercise all rights and remedies

provided for in the DIP Documents, and to take any or all of the following actions without

further order of or application to the Court (as applicable): (i) immediately terminate the

Debtors' use of any Cash Collateral; (ii) cease making any extensions of credit under the DIP

Facility to the Debtors; (iii) declare all DIP Obligations to be immediately due and payable; (iv)

freeze monies or balances in the Debtors' accounts (and, with respect to the DIP Facility, sweep

all funds contained in the Current Master Accounts or any other deposit or securities account of

the Debtors); (v) immediately set-off any and all amounts in accounts maintained by the Debtors

with the DIP Agent or the DIP Lenders against the DIP Obligations, or otherwise enforce any

and all rights against the DIP Collateral in the possession of any of the applicable DIP Lenders,

including, without limitation, disposition of the DIP Collateral solely for application towards the

DIP Obligations; and (vi) take any other actions or exercise any other rights or remedies

permitted under this Interim Order, the DIP Documents or applicable law to effect the repayment

of the DIP Obligations; *provided, however*, that prior to the exercise of any right in clauses (i),

(iv), (v) or (vi) of this paragraph, the DIP Agent shall be required to provide, in each case, five

(5) business days prior written notice (the "Default Notice Period") to the Debtors, lead counsel

for the Debtors, lead counsel for the Committee (if any), lead counsel for each of the Prepetition

Secured Parties and counsel for the Stalking Horse, of the DIP Agent's intent to exercise its

-39-

rights and remedies. Unless the Debtors seek and obtain emergency relief from the Bankruptcy Court within the Default Notice Period, the Debtors shall cooperate with the DIP Agent and the DIP Lenders in their exercise of rights and remedies, whether against the DIP Collateral or otherwise.

31. ***Good Faith under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order.*** The DIP Agent, the DIP Lenders and the Post-Petition LC Issuer have acted in good faith in connection with the DIP Facility, the Post-Petition LC Documents and with this Interim Order, and their reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, reversed, amended or vacated by a subsequent order of the Court or any other court, the DIP Agent, the DIP Lenders and the Post-Petition LC Issuer are entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such modification, reversal, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby. Any liens or claims granted to the DIP Agent, the DIP Lenders and the Post-Petition LC Issuer arising prior to the effective date of any such modification, reversal, amendment, or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

32. ***DIP and Other Expenses.*** The Debtors shall, from and after the Petition Date, pay, in cash, promptly upon receipt of invoices therefor (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing motions or fee

applications, all reasonable and documented out-of-pocket fees, costs, disbursements and expenses of the DIP Agent, the DIP Lenders and the Post-Petition LC Issuer incurred at any time, as provided by the DIP Documents, the Interim Order, and the Budget.  Payment of all such fees and expenses shall not be subject to allowance by the Court, and such parties' right to receive such payment of fees and expenses shall not be required to comply with the U.S. Trustee's fee guidelines.  Such fees and expenses shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

33.    *Proofs of Claim.* The DIP Agent, the DIP Lenders, the Prepetition Indenture Trustee, the Prepetition Note Parties and the Prepetition Credit Facility Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases for any claim allowed herein. Any proof of claim filed by the DIP Agent, the DIP Lenders, the Prepetition Note Parties Agents or the Prepetition Lenders shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons. Any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases shall not apply to the DIP Agent, the DIP Lenders, the Prepetition Indenture Trustee and the Prepetition Note Parties.

34.    *[Reserved.]*

35.    *Carve-Out.*

(a)    For the purposes of this Interim Order, the term "Carve-Out" shall mean the following: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717; (ii) all reasonable fees and expenses incurred by any trustee under Bankruptcy Code section 726(b) in any Successor Cases not to exceed $25,000; (iii) to the extent allowed by the Bankruptcy Court at any time, all accrued and unpaid fees, disbursements, costs and expenses

that are incurred by professionals or professional firms retained by the Debtors and any Committee (collectively, the "Professionals") at any time before the date of the delivery by the DIP Agent, at the direction of the Required Lenders, of a Carve-Out Notice (defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Notice, in an amount not to exceed the amounts set forth in the relevant professional fee line item in the DIP Budget for the relevant period up to the date on which the Carve-Out Notice is delivered; and (iv) to the extent allowed by the Bankruptcy Court at any time, all accrued and unpaid fees, disbursements, costs and expenses incurred by Professionals after the date that is on and after the date of the delivery by the DIP Agent, at the direction of the Required Lenders, of the Carve-Out Notice, in an aggregate amount not to exceed $350,000 (the amount set forth in this clause (iv) being the "Post Carve-Out Notice Cap"), $300,000 of which shall be allocated to the Debtors' Professionals and $50,000 of which shall be allocated to the Committee's Professionals.  For purposes of the foregoing, "Carve-Out Notice" shall mean a written notice delivered by the DIP Agent, at the direction of the Required Lenders, to the Debtors and their counsel, the U.S. Trustee, and counsel to any Committee, which notice may be delivered at any time following the occurrence of an Event of Default under the DIP Documents (as defined therein), and stating that the Post Carve-Out Notice Cap has been invoked.  Prior to the Termination Date, the Debtors may fund (no more frequently than once a week) into the Segregated Professional Fee Account (as defined in the DIP Credit Agreement) an aggregate amount equal to the accrued and unpaid fees, costs and expenses of the Debtors' Professionals and the Committee's Professionals referred to in subclause (iii) above, which are incurred in connection with the Chapter 11 Cases, for the applicable period ending such week and in an aggregate amount not to exceed the amounts set forth in the DIP Budget for such fees, costs and expenses for such period that have

not previously been funded or credited to such Blocked Account (the "Professional Fee Amounts"), which Professional Fee Amounts shall only be used by the Loan Parties to pay the fees, costs and expenses of the Debtors' Professionals and the Committee's Professionals referred to in subclause (iii) above that are allowed by order of this Bankruptcy Court and in accordance with the DIP Budget. The DIP Agent agrees, and is hereby directed, that it will not apply funds contained in or credited to the Segregated Professional Fee Account to the payment of the DIP Obligations until the payment of all fees, costs and expenses of the Professionals allowed by the Bankruptcy Court constituting the Carve-Out.

(b)    Prior to the occurrence of an Event of Default, the Debtors are authorized to pay compensation and reimbursement of fees and expenses that are authorized to be paid under sections 330 and 331 of the Bankruptcy Code pursuant to an order of the Bankruptcy Court and in accordance with the DIP Budget, as the same may be due and payable, and such payments shall not reduce the Post Carve-Out Notice Cap. Upon receipt of the Carve-Out Notice, the right of the Debtors to pay Professionals' fees and expenses outside of subparagraph (a) above shall terminate, and, after receipt of the Carve-Out Notice, the Debtors shall provide immediate notice to all Professionals informing them that such notice was delivered and further advising them that the Debtors' ability to pay such Professionals pursuant to subparagraph (a)(iv) above is subject to and limited by the Post Carve-Out Notice Cap; *provided, however*, that all accrued and unpaid fees, disbursements, costs and expenses subject to subparagraph (a)(iii) shall remain subject to and payable in accordance with the DIP Budget pursuant to any interim compensation procedures authorized by the Bankruptcy Court or otherwise payable by final order of the Bankruptcy Court.

(c)    Nothing herein shall (i) be construed as consent by the DIP Agent or the DIP Lenders to the allowance of any fees, costs, expenses, reimbursements or compensation sought by any such Professionals, (ii) affect the right of the DIP Agent or the DIP Lenders or any other party in interest to object to the allowance and payment of such fees, expenses, reimbursements or compensation sought by any such Professionals or (iii) affect the right of the DIP Agent or the DIP Lenders to the return of any portion of the Carve-Out that is funded under the DIP Documents with respect to fees and expenses for a Professional that are approved on an interim basis but are later denied, in whole or in part, on a final basis.

(d)    For the avoidance of doubt, the Carve-Out shall be senior to all liens and claims (including, without limitation, administrative and superpriority claims) securing the DIP Obligations and the Prepetition Debt Obligations, including the DIP Liens and Adequate Protection Liens and any and all other forms of adequate protection, liens, security interests and other claims granted herein to the Prepetition Secured Parties the DIP Agent, or the DIP Lenders.

36.    ***Effect of Stipulations on Third Parties; Investigations of Prepetition Liens.***

(a)    The stipulations and admissions contained in this Interim Order, including, without limitation, in <u>paragraph 4</u> of this Interim Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes.

(b)    The stipulations and admissions contained in this Interim Order, including, without limitation, in <u>paragraph 4</u> of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any Committee appointed in these Chapter 11 Cases or any other person or entity, unless (1) the Committee has filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this

paragraph 36) by the Challenge Expiration Date (defined below) (x) challenging the validity, enforceability, priority or extent of (A) the Prepetition Credit Facility Liens and/or Prepetition Credit Facility Obligations, with respect to the Prepetition Credit Facility Parties, and/or (B) the Prepetition Note Liens and/or Prepetition Note Obligations, with respect to the Prepetition Note Parties, or (y) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims or any other any claims, counterclaims or causes of action, objections, contests or defenses (collectively, clause (x) and (y), the "Claims and Defenses") against either of the Prepetition Credit Facility Parties and/or the Prepetition Note Parties (as applicable), or any of their respective affiliates, representatives, attorneys or advisors in connection with matters related to the Prepetition Debt Documents, the Prepetition Debt Obligations, the Prepetition Collateral, and (2) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such filed adversary proceeding or contested matter; *provided* that, (i) as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date, and (ii) any challenge or claim shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Expiration Date shall be forever deemed waived, released and barred.  If no such adversary proceeding or contested matter is filed, (x) to the extent not theretofore repaid, the Prepetition Credit Facility Obligations and/or the Prepetition Note Obligations (as applicable) shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Chapter 11 Cases and any Successor Cases, (y) the Prepetition Credit Facility Parties' and/or the Prepetition Note Parties' liens and security interests in the Prepetition Collateral (as applicable) shall be deemed to have been, as of the Petition Date, legal, valid, binding and

-45-

perfected, not subject to recharacterization, subordination or avoidance, and such liens shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed or elected for any of the Debtors) and (z) the repayment of the Prepetition Credit Facility Obligations shall be irrevocable and shall not be subject to restitution, disgorgement or any other challenge under any circumstances, including, without limitation, pursuant to any Claims and Defenses. If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained herein, including in paragraph 4 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the first sentence of this paragraph) on any Committee and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter.  Nothing in this Interim Order vests or confers on any entity or Person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Prepetition Debt Documents or the Prepetition Debt Obligations (each, as applicable).

(c)     For purposes hereof, the term "Challenge Expiration Date" shall mean the date that is the earlier of (x) seventy-five (75) calendar days from the entry of the Interim Order, and (y) at least sixty (60) calendar days from the date of the Committee's formation; provided, however, that such date may be extended in writing by the Required Lenders (and, only with respect to any challenge to the Prepetition Credit Facility Obligations and/or the Prepetition Credit Facility Liens, with (a) the consent of the Required Lenders and (b) the consent of the

Prepetition Credit Facility Agent (such consent not to be unreasonably withheld, delayed or conditioned)) or by order of this Court upon a showing by the movant of cause.

37.     **No Third Party Rights.**  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary other than any Committee.

38.     **Limitation on Charging Expenses Against Collateral.**  Upon entry and subject to the terms of the Final Order, no expenses of administration of the Chapter 11 Cases or any Successor Cases that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, and the Debtors irrevocably waive and shall be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment), for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties (as applicable) upon the DIP Collateral or the Prepetition Collateral (as applicable).

39.     **Section 552(b)/No Marshalling/Application of Proceeds.**  Upon entry of the Final Order, the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) shall not apply to any of the Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral.  In no event shall the DIP Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of

"marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition

Collateral, as applicable. All proceeds of DIP Collateral and Prepetition Collateral (as the case

may be) shall be received and applied in accordance with this Interim Order and the DIP

Documents as applicable. *→ section 363(k) of the Bankruptcy Code and*

40.    **Right to Credit Bid.** The DIP Agent (at the direction of the Required Lenders)

shall have, subject to the terms hereof, the right to "credit bid" up to the full amount of all of the

DIP Obligations in connection with any sale of all or any portion of the Debtors' assets,

including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or

included as part of any restructuring plan subject to confirmation under section

1129(b)(2)(A)(ii) of the Bankruptcy Code.

41.    **Discharge Waiver/Release.**

(a)    Except as expressly provided in this Interim Order or in the DIP Documents, the

DIP Liens, the LC Lien, the Superpriority Claims, the Adequate Protection Obligations and all

other rights and remedies of the DIP Agent, the DIP Lenders, the Post-Petition LC Issuer and the

Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP

Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an

order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the

Chapter 11 Cases, terminating the joint administration of the Chapter 11 Cases or by any other

act or omission or (ii) the entry of an order confirming a plan of reorganization in any of the

Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code,

unless the DIP Obligations (other than the Post-Petition LC Obligations) have been indefeasibly

paid in full in cash prior thereto and, in the case of each Post-Petition Letter of Credit then

outstanding, all amounts have been fully drawn thereunder or, if not drawn, returned to the Post-

Petition LC Issuer unless cash collateralized. The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the Prepetition Secured Parties the DIP Agent or the DIP Lenders pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in any of the Chapter 11 Cases, or following dismissal of any of the Chapter 11 Cases, and shall maintain their priority as provided by this Interim Order. The terms and provisions concerning the indemnification of the DIP Agent, the DIP Lenders and the Post-Petition LC Issuer shall continue in any of the Chapter 11 Cases following dismissal of any of the Chapter 11 Cases, termination of the provisions of this Interim Order, and/or the indefeasible repayment of the DIP Obligations.

(b)    As set forth herein, none of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP Obligations in full in cash on or prior to the earlier to occur of the effective date of such plan of reorganization or sale. The Debtors forever waive and release any and all such claims and causes of action against the DIP Agent and the DIP Lenders (in such capacities) whether at law or in equity, arising under or relating to section 105 and Chapter 5 of the Bankruptcy Code and under any other similar provisions of applicable state or federal law, whether known or unknown.

42.    ***Rights Preserved.*** Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Prepetition Secured Parties', the DIP Agent's, the DIP Lenders' or the Post-Petition LC Issuer's rights to seek any other or supplemental relief in respect of the Debtors; (b) the rights of the Prepetition Secured Parties, the DIP Agent, the DIP Lenders and the Post-

-49-

Petition LC Issuer under the DIP Documents, the Bankruptcy Code or under applicable law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any or all of the Chapter 11Cases to a case under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans of reorganization, or (iv) object to the application or motion by any professionals retained by the Debtors or any Committee for the payment of fees and expenses, including, in each case, any fees and expenses to be paid pursuant to the DIP Budget or from the Carve-Out; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the Prepetition Secured Parties, the DIP Agent, the DIP Lenders or the Post-Petition LC Issuer. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors' or any party-in-interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence or the payment of Professionals subject to the Carve-Out in connection with any such opposition.

43.    *No Waiver by Failure to Seek Relief.* The DIP Agent's, any DIP Lender's or the Post-Petition LC Issuer's delay or failure to exercise rights and remedies under the DIP Documents, applicable law, or this Interim Order shall not constitute a waiver of the DIP Agent's, such DIP Lenders' or the Post-Petition LC Issuer's respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed by the DIP Agent, such DIP Lenders or the Post-Petition LC Issuer, as applicable.

44.    *Binding Effect; Successors and Assigns.*  Upon entry of the Interim Order, the DIP Documents and the provisions of this Interim Order, including all findings herein, shall be

binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP

Agent, the DIP Lenders, the Post-Petition LC Issuer, the Committee (if any) and the Debtors and

their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter

appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to

Bankruptcy Code section 1104 or any other fiduciary appointed as a legal representative of any

of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure

to the benefit of the DIP Agent, the DIP Lenders, the Post-Petition LC Issuer and the Debtors

and their respective successors and assigns, *provided, however,* that the DIP Agent, the DIP

Lenders and the Post-Petition LC Issuer shall have no obligation to extend any financing or

financing accommodation to any chapter 7 or chapter 11 trustee or similar responsible person

appointed for the estates of the Debtors.

45.    ***Interim Order Governs.***  In the event of any inconsistency between the provisions

of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

46.    ***No Control, Fiduciary Duties.***  In determining to make any loan (whether under

the DIP Credit Agreement, promissory notes or otherwise) or in exercising any rights or

remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP

Agent, the DIP Lenders and the Post-Petition LC Issuer shall not (i) be deemed to be in control

of the operations of the Debtors, (ii) owe any fiduciary duty to the Debtors, their respective

creditors, shareholders or estates or (iii) be deemed to be acting as a "responsible person" or

"owner or operator" with respect to the operation or management of the Debtors (as such terms,

or any similar terms, are used in the United States Comprehensive Environmental Response,

Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.,* as amended, or any similar federal

or state statute).

(including without limitation any inconsistency
between paragraph 12(a)(ii) herein and the
definition of Permitted Existing Liens in the
DIP Credit Agreement).

47. *Survival.* The provisions of this Interim Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in any of the Chapter 11 Cases, (b) converting any or all of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, (c) dismissing any or all of the Chapter 11 Cases, or (d) pursuant to which the Court abstains from hearing any of the Chapter 11 Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the Prepetition Secured Parties, the DIP Agent, the DIP Lenders or the Post-Petition LC Issuer pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in any of the Chapter 11 Cases, or following dismissal of any of the Chapter 11 Cases, and shall maintain their priority as provided by this Interim Order. The indemnification obligations of the Debtors under the DIP Credit Agreement and the other DIP Documents shall continue in any of the Chapter 11 Cases following dismissal of any of the Chapter 11 Cases or in any of the Successor Cases, termination of the provisions of this Interim Order, and/or the indefeasible repayment of the Prepetition Debt Obligations and the DIP Obligations.

48. *Effectiveness.* This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024, any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

49. *Headings.* Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

50.     *Final Hearing.* The Final Hearing will be held by the Bankruptcy Court on April 25, 2014 at 9:30 a.m. (prevailing Eastern time).  The Debtors shall promptly transmit copies of this Interim Order (which shall constitute adequate notice of the Final Hearing and the relief requested at such hearing) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with the Bankruptcy Court and to the Committee.  Any party in interest objecting to the relief sought at the Final Hearing shall file a written objection, which shall be served upon (a) (i) K&L Gates LLP, Attn: Charles Dale III and Mackenzie L. Shea, State Street Financial Center, One Lincoln Street, Boston MA 02111 and (ii) Landis Rath & Cobb, LLP, Attn: Adam Landis and Kerri Mumford, 919 Market Street, Suite 600, Wilmington, DE 19801, attorneys for the Debtors; (b) (i) Stroock & Stroock & Lavan LLP, Attn: Kristopher Hansen, Erez E. Gilad and Jonathan D. Canfield, 180 Maiden Lane, New York, NY 10038 and (ii) Young Conaway Stargatt & Taylor, LLP, Attn: Matthew Lunn, 1000 North King Street, Wilmington, DE 19801, attorneys for the DIP Lenders; (c) (i) Choate Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: Kevin Simard and John Ventola and (ii) Greenberg Traurig LLP, One International Place, Boston, MA 02110, Attn: Jeffery M. Wolf; (d) Young Conaway Stargatt & Taylor, LLP, Attn:  Cheryl Santaniello, 1000 North King Street, Wilmington, DE 19801, attorneys for the Post-Petition LC Issuer, and (e) the U.S. Trustee, Attn: Richard L. Schepacarter, Trial Attorney, and shall be filed with the Clerk of the United States Bankruptcy Court, District of Delaware, in each case to allow actual receipt by the foregoing no later than April 18, 2014 at 4:00 p.m. (prevailing Eastern time).

51.     *Retention of Jurisdiction.* The Court shall retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the DIP Facility and/or this Interim Order.

Dated: April 4, 2014
      Wilmington, Delaware

The Honorable Kevin J. Carey
United State Bankruptcy Judge